IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BELDEN TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 08-823-SLR |
| | ) | |
| LS CORP., LS CABLE LTD., and | ) | |
| LS CABLE AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

John W. Shaw, Esquire, Adam W. Poff, Esquire, and Karen E. Keller, Esquire, of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware.  Counsel for Plaintiff. Of Counsel:  Matthew B. Lowrie, Esquire, and Robert J. Silverman, Esquire, of Lowrie, Lando & Anastasi, LLP, Cambridge, Massachusetts.

Jeffrey L. Moyer, Esquire, Anne Shea Gaza, Esquire, and Lori A. Brewington, Esquire, of Richards, Layton & Finger, P.A., Wilmington, Delaware.  Counsel for Defendants.  Of Counsel:  Brian M. Poissant, Esquire, and Yeah-Sil Moon, Esquire, of Jones Day, New York, New York.

## MEMORANDUM OPINION

Dated:  June **17** , 2009
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

On October 31, 2008, plaintiff Belden Technologies, Inc. ("Belden") initiated this suit against defendants LS Corp., LS Cable Ltd., LS Cable America, Inc., Superior Essex Inc., and Superior Essex Communications LP for infringement of United States Patent Nos. 7,339,116 B2 ("the '116 patent"); 7,135,641 B2 ("the '641 patent"); 6,596,944 B1 ("the '944 patent"); and 6,074,503 ("the '503 patent"). (D.I. 1) Belden filed an amended complaint on December 5, 2008, alleging infringement of the same patents, but dropping Superior Essex Inc. and Superior Essex Communications LP as defendants. (D.I. 5) The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

On January 28, 2009, defendants filed a motion to dismiss for lack of personal jurisdiction, improper venue, and insufficiency of service of process pursuant to Rules 12(b)(2), (3), and (5) of the Federal Rules of Civil Procedure. (D.I. 11) Defendants allege that LS Cable Ltd. and LS Cable America, Inc. are not subject to personal jurisdiction in Delaware. (D.I. 12) Defendants also contend that venue is improper in Delaware because LS Cable Ltd. and LS Cable America, Inc. do not "reside" in Delaware. (*Id.*) Defendants further allege that Belden's attempt to serve process on LS Cable Ltd. was inadequate. (*Id.*)

Plaintiff filed its answering brief on March 16, 2009, requesting that the court deny the motions. (D.I. 17) Plaintiff alternatively requests that the court allow jurisdictional discovery. (*Id.*) Defendants filed a reply brief on April 23, 2009, renewing their previous arguments. (D.I. 23)

For the reasons that follow, the court denies defendants' motion to dismiss for insufficiency of service of process and denies without prejudice defendants' motions to dismiss for lack of personal jurisdiction and improper venue in order to allow jurisdictional discovery.

## II. BACKGROUND[1]

Belden, a Delaware corporation with its principal place of business in St. Louis, Missouri, owns the '116, '641, '944, and '503 patents.[2]  (D.I. 5 at ¶ 1) LS Cable Ltd. is a corporation organized under the laws of the Republic of Korea with its principal place of business in Korea.  (Id. at ¶ 3; D.I. 12 at 2-3)  LS Cable Ltd. is the world's third largest cable manufacturer.  (D.I. 17 at 2)  LS Cable America, Inc. is a New Jersey corporation with its principal place of business in New Jersey.  (D.I. 5 at ¶ 4; D.I. 12 at 3)

Plaintiff seeks relief from defendants' alleged infringement of four of plaintiff's patents "relating to inventions in the field of data and communications cable." (D.I. 17 at 2)  According to plaintiff, LS Cable Ltd. and LS Cable America, Inc. "have ongoing business relationships with numerous regional distributors in the United States and have entered into multi-million dollar contracts with large United States corporations to supply and service their cable products within Delaware and throughout the United

---

[1]For purposes of this motion only, the facts alleged in the complaint are taken as true. See Christ v. Cormick, No. 06-275, 2007 WL 2022053, at *1 (D. Del. July 10, 2007).

[2]The '116 patent, entitled "High Performance Data Cable," issued on March 4, 2008. (D.I. 5, ex. A)  The '641 patent, entitled "Data Cable With Cross-Twist Cabled Core Profile," issued on November 14, 2006. (Id., ex. B)  The '944 patent, entitled "Enhanced Data Cable With Cross-Twist Cabled Core Profile," issued on July 22, 2003. (Id., ex. C)  The '503 patent, entitled "Making Enhanced Data Cable With Cross-Twist Cabled Core Profile," issued on June 13, 2000. (Id., ex. D).

2

States." (*Id.*) Furthermore, plaintiff alleges that defendants have embarked on an aggressive marketing effort to distribute their products throughout the United States. (*Id.* at 2, 14)

In December 2006, LS Cable Ltd. entered into a three-year agreement to supply $34 million worth of automotive cable to Yazaki North America, a leader in the field of automotive cable. (*Id.* at 3; D.I. 18, ex. C) In January 2007, LS Cable Ltd. contracted to export $50 million worth of high-voltage cables to Connecticut Light & Power Co., the largest electricity company in Connecticut and the supplier of high voltage transmission lines to all of New England. (D.I. 17 at 3; D.I. 18, ex. D) In April 2008, LS Cable Ltd. entered into a United States distribution and cable warranty agreement with Signamax Connectivity Systems ("Signamax"). (D.I. 17 at 4; D.I. 18, ex. H) Plaintiff claims that Signamax "has a nationwide network of distributors and . . . [representatives] . . . through which [d]efendants regularly and systematically solicit sales and customers in Delaware." (D.I. 17 at 4)

Defendants created a Delaware holding company, US HoldCo, to acquire Superior Essex Inc. ("Superior Essex"), a Delaware corporation, in June 2008. (*Id.* at 3, 4) At the time of the acquisition, Superior Essex was the world's largest producer of magnet wire and a leader in the North American cable market. (*Id.* at 2; D.I. 18, ex. B at 1) Superior Essex is currently before this court on a similar patent infringement suit initiated by plaintiff. *See Belden Technologies, Inc. v. Superior Essex, Inc.*, Civ. No. 08-063 (D. Del. filed Jan. 29, 2008).

3

In July 2008, LS Cable Ltd. contracted to supply $40 million worth of extra high voltage cables and accessories to U.S. Platte River Power Authority. (D.I. 17 at 3; D.I. 18, ex. E) Plaintiff claims that LS Cable Ltd. "courts smaller players in the United States Cable market (including Delaware) over the internet." (D.I. 17 at 4)

## III. STANDARDS OF REVIEW

### A. Personal Jurisdiction

Rule 12(b)(2) directs the court to dismiss a case when the court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). When reviewing a motion to dismiss pursuant to Rule 12(b)(2), a court must accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor. *Traynor v. Liu,* 495 F. Supp. 2d 444, 448 (D. Del. 2007). Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing, with reasonable particularity, that sufficient minimum contacts have occurred between the defendant and the forum to support jurisdiction. *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987). To meet this burden, the plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 67 n.9 (3d Cir. 1984).

To establish personal jurisdiction, the plaintiff must produce facts sufficient to satisfy two requirements by a preponderance of the evidence, one statutory and one constitutional. *See id.* at 66; *Reach & Assocs. v. Dencer,* 269 F. Supp. 2d 497, 502 (D. Del. 2003). With respect to the statutory requirement, the court must determine

4

whether there is a statutory basis for jurisdiction under the forum state's long arm statute. *See Reach & Assocs.*, 269 F. Supp. 2d at 502. The constitutional basis requires the court to determine whether the exercise of jurisdiction comports with the defendant's right to due process. *See id.*; *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Under the Due Process Clause, a defendant is subject to the jurisdiction of a federal court only when the defendant's conduct is such that it should "reasonably anticipate being haled into court there." *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Personal jurisdiction over a nonresident defendant is proper when either specific or general jurisdiction exists. *See Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*, 746 F.2d 208, 211 (3d Cir. 1984). "Specific personal jurisdiction exists when the defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or related to those activities.' " *BP Chems. Ltd. v. Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). General jurisdiction exists when the defendant's contacts with the forum are "continuous and systematic," whether or not the contacts relate to the litigation. *See id.* (quoting *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416 (1984)).

### B. Venue

Rule 12(b)(3) provides that a motion to dismiss may be made on the basis of improper venue. Fed. R. Civ. P. 12(b)(3). The purpose of venue, in most instances, "is to protect the defendant against the risk that a plaintiff will select an unfair or

inconvenient place of trial." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291,

294 (3d Cir. 1994).

> Title 28 of the United States Code § 1400(b) provides that a

> civil action for patent infringement may be brought in the judicial district
> where the defendant resides, or where the defendant has committed acts
> of infringement and has a regular and established place of business.

28 U.S.C. § 1400(b) (2006).  For the purposes of venue, a defendant "that is a

corporation . . . reside[s] in any judicial district in which it is subject to personal

jurisdiction at the time the action is commenced." *Id.* § 1391(c).  Additionally, § 1391(d)

states that an alien may be sued in any district.

### C. Service of Process

A defendant may file a motion to dismiss pursuant to Rule 12(b)(5) when a

plaintiff fails to properly serve him or her with the summons and complaint.  Rule 4(m)

states that, "[i]f service of the summons and complaint is not made upon a defendant

within 120 days after the filing of the complaint, the court, upon motion or on its own

initiative after notice to the plaintiff, shall dismiss the action."  Fed. R. Civ. P. 4(m).  The

Rule goes on the state that, "[u]pon a showing of good cause for the failure to serve,

the court must extend the time for service; [and] the court can, at it discretion, extend

the time for service even if plaintiff has not shown good cause for the delay." *Daniels v.*

*Correctional Med. Servs.*, 380 F. Supp. 2d 379, 384 (D. Del. 2005) (citing Fed. R. Civ.

P. 4(m)); *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1098 (3d Cir.

1995).

## IV. DISCUSSION

### A. Personal Jurisdiction

The determination of personal jurisdiction requires a two-part analysis. It must

be determined if Delaware's long-arm statute[3] confers jurisdiction and, if it does,

whether the assertion of personal jurisdiction complies with due process. Delaware's

long-arm statute provides, in relevant part, that personal jurisdiction is proper over any

nonresident who, in person or through an agent:

> (1) Transacts any business or performs any character of work or service in
> the State; . . . (3) Causes tortious injury[4] in the State by an act or omission
> in the State; [or] (4) Causes tortious injury in the State or outside of the
> State by an act or omission outside the State if he regularly does or
> solicits business, engages in any other persistent course of conduct in the
> State or derives substantial revenue from services, or things used or
> consumed in the State.

10 Del. C. § 3104(c). Subsections (1) and (3) grant specific jurisdiction. *Boone v. Oy*

*Partek Ab*, 724 A.2d 1150, 1155 (Del. Super. 1997). Specific jurisdiction requires that

_____

[3]The court applies the Delaware long-arm statute consistent with Delaware state
courts' interpretations. *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 700 (D.
Del. 2001); *see also LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed.
Cir. 2000). Delaware state courts interpret the long-arm statute as "confer[ring]
jurisdiction to the maximum extent possible under the Due Process Clause." *Hercules
Inc. v. Leu Trust & Banking (Bahamas) Ltd.*, 611 A.2d 476, 480-81 (Del. 1992);
*LaNuova D & B S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (D. Del. 1986); *see also Boone
v. Oy Partek Ab*, 724 A.2d 1150, 1156-57 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del.
1998). As this district has before acknowledged, Delaware courts "liberally interpret the
[long-arm] statute in favor of exercising jurisdiction." *Jeffreys v. Exten*, 784 F. Supp.
146, 151 (D. Del. 1992). Nevertheless, Delaware state courts do not collapse the long-
arm inquiry into the due process inquiry. *See Cordis Corp. v. Advanced Cardiovascular
Sys., Inc.*, No. 97-635, 1999 WL 805284, at *7 n.3 (D. Del. Sept. 17, 1999) (citing
*Hercules*, 611 A.2d at 480-81).

[4]Patent infringement is a tortious act for purposes of the Delaware long-arm
statute. *Merck & Co. v. Barr Labs., Inc.*, 179 F. Supp. 2d 368, 373 (D. Del. 2002).

the cause of action arise from the defendant's contacts with the forum state. *See Provident Nat'l Bank*, 819 F.2d at 437. Subsection (4) confers general jurisdiction, which requires a greater number of contacts, but allows the exercise of personal jurisdiction even when the claim is unrelated to the forum contacts. *See Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466 (D. Del. 1991).

Plaintiff employs two arguments to establish that the court may properly exercise personal jurisdiction over defendants consistent with Delaware's long-arm statute. Plaintiff first argues that defendants are subject to the court's exercise of personal jurisdiction based on the dual jurisdiction concept, which arises from at least partial satisfaction of subsections (1) and (4) of the long-arm statute. *See Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 371 (D. Del. 2008). Developed after Delaware courts grappled with how to apply the long-arm statute to "stream of commerce" situations, the dual jurisdiction approach comprises the following:

> [T]he enumerated activities in [subsection (4)] should be analyzed to determine whether there is an intent or purpose on the part of the [nonresident] to serve the Delaware market with its product. Likewise, when analyzing [subsection] (1) it is not important that the [nonresident] itself act in Delaware. Instead, if the intent or purpose on behalf of the [nonresident] to serve the Delaware market results in the introduction of the product to this State and plaintiff's cause of action arises from injuries caused by that product, this section is satisfied.

*Id.* at 372 (quoting *Boone*, 724 A.2d at 1158).

To establish personal jurisdiction under the dual jurisdiction approach, plaintiff points to defendants' ongoing business relationships with distributors such as Signamax and defendants' involvement in the multi-million dollar contracts to supply its products throughout the United States. (D.I. 17 at 12) Plaintiff asserts that defendants' broad

8

pursuit of the United States cable market manifests defendants' intent and purpose to serve the Delaware market based on a lack of evidence from defendants to exclude Delaware from their marketing efforts. (*Id.* at 13) Plaintiff also posits that the presence of defendants' offices in the neighboring state of New Jersey demonstrates that it is reasonably foreseeable that defendants' "infringing products"[5] will pierce the Delaware market. (*Id.* at 14)

The dual jurisdiction analysis requires a showing of both (1) an intent to serve the Delaware market[6] and (2) that this intent results in the introduction of the product into the market and that plaintiff's cause of action arises from injuries caused by that product. *See Power Integrations*, 547 F. Supp. 2d at 372. Furthermore, a court "must take great care" not to overemphasize either prong in a dual jurisdiction analysis. *Id.* (citing *Boone*, 724 A.2d at 1158).

---

[5]The parties briefly spar over plaintiff's failure to specifically identify defendants' allegedly infringing products. (D.I. 17 at 1; D.I. 23 at 5) The parties do not squarely address this issue in their briefs and, therefore, this specific issue is not before the court on this particular motion.

[6]To establish an intent to serve the Delaware market in the context of a personal jurisdiction analysis, Delaware courts "do not require evidence that Delaware itself was specifically targeted (which given the size of the state, would presumably exist rarely if ever)." *Power Integrations*, 547 F. Supp. 2d at 373. Furthermore, a non-resident firm's "intent to serve the United States market is sufficient to establish an intent to serve the Delaware market, unless there is evidence that the firm intended to exclude from its marketing and distribution efforts some portion of the country that includes Delaware." *Id.* (citing *Tobin v. Astra Pharmaceutical Prod., Inc.*, 993 F.2d 528, 544 (6th Cir. 1993), and *Barone v. Rich Bros. Interstate Display Fireworks*, 25 F.3d 610, 614-15 (8th Cir. 1994)). Finally, the dual jurisdiction theory is satisfied if jurisdiction is "based on ongoing relationships with others in the stream of commerce, [and] 'it was reasonably foreseeable that [the defendant's] accused [products] . . . would make their way into the Delaware market.' " *Id.* at 374 (citing *Philips Elecs. N. Am. Corp. v. Contec Corp.,* No. 02-123, 2004 WL 503602, at *4 (D. Del. Mar. 11, 2004)).

While plaintiff's arguments concerning defendants' distribution agreements and contracts might establish an intent on defendants' behalf to serve the Delaware market, plaintiff fails to satisfy the second prong - to show with reasonable particularity that any of the accused products ended up in Delaware.  While it is **possible** that the accused products penetrated Delaware's market, plaintiff presents no competent evidence to substantiate this conclusion.  Therefore, because plaintiff fails to meet its burden with respect to the second prong, its argument for personal jurisdiction under the dual jurisdiction theory fails.

For this same reason, plaintiff's alternate argument for specific jurisdiction also fails.  Specific jurisdiction requires that the cause of action arise from the defendant's conduct in the forum state.  *See Provident Nat'l Bank*, 819 F.2d at 437.  Plaintiff argues for specific jurisdiction based on defendants' acquisition of Superior Essex, a Delaware corporation, and based on defendants' distribution agreement with Signamax.  (D.I. 17 at 14)  Apart from ownership of a Delaware corporation and a distribution agreement, plaintiff presents no competent evidence of any specific activity or contacts by defendants in Delaware.  Mere ownership of a Delaware corporation "is not sufficient to confer personal jurisdiction" over a non-resident defendant.  *Ace & Co. v. Balfour Beatty PLC*, 148 F. Supp. 2d 418, 424 (D. Del. 2001).  Furthermore, although plaintiff cites defendants' distribution agreement with Signamax, plaintiff proffers no specific, competent evidence of any product entering the Delaware market, but merely advances general assertions that Signamax services Delaware customers.  (D.I. 17 at 4, 17)

10

Therefore, plaintiff has failed to satisfy the specific jurisdiction prong of Delaware's long-arm statute.

Because plaintiff cannot satisfy the statutory basis for personal jurisdiction, the court need not reach the constitutional due process prong of the personal jurisdiction analysis. In any event, because the Delaware long-arm statute confers the identical jurisdiction as does the Due Process Clause,[7] asserting personal jurisdiction over defendants would offend due process for the same reasons articulated above. Plaintiff fails to meet its burden with respect to defendants' motion to dismiss for lack of personal jurisdiction.

## B. Jurisdictional Discovery

Although plaintiff has failed to advance sufficient facts to establish personal jurisdiction, plaintiff has advanced sufficient factual allegations to justify jurisdictional discovery. While plaintiff shoulders the burden of demonstrating sufficient jurisdictional facts, "courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.' " *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (quoting *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)). "[It] is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Id.* at 457 (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). "If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the

---

[7]*See supra* note 3.

11

requisite 'contacts between [the parties] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id.* at 456 (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). Jurisdictional discovery is "particularly appropriate where the defendant is a corporation." *Metcalfe v. Renaissance Marine, Inc.*, No. 08-1720, 2009 WL 1408523, at *9 (3d Cir. May 21, 2009). A court must determine whether certain discovery avenues, "if explored, **might** provide the 'something more' needed" to establish personal jurisdiction. *Toys "R" Us*, 318 F.3d at 456 (emphasis added).

As discussed above, to establish personal jurisdiction plaintiff points to a number of factors. Plaintiff claims that Signamax supplies defendants' products throughout the United States, including Delaware. (D.I. 17 at 1) Plaintiff further alleges that Signamax has a "nationwide network of distributors and has a sales manager, a technical support specialist, and a manufacturer's representative assigned to its business in Delaware, through which [d]efendants regularly and systematically solicit sales and customers in Delaware." (D.I. 17 at 4; D.I. 18, ex. I) Plaintiff also claims that defendants' relationship with Signamax includes a warranty agreement for customers who purchase products from Signamax anywhere in the United States, including Delaware. (D.I. 17 at 4; D.I. 18, ex. H) Defendants contest these allegations, claiming that Signamax does not have representatives in Delaware. (D.I. 23 at 9) Defendants state that they "have never offered a warranty on the accused products in Delaware." (*Id.*; D.I. 13 at ¶ 8; D.I. 14 at ¶ 8)

12

Plaintiff also cites defendants' multi-million dollar distribution contracts by which they supply their products to American companies such as Yazaki North America, Connecticut Light & Power Co., and U.S. Platte River Power Authority. (D.I. 17 at 3-4; D.I. 18, exs. C-E) Although defendants do not dispute the existence of these distribution contracts, defendants contend that these contracts concern activities outside Delaware and involve automotive and power cables, which are completely distinct from the data and communications cables on which plaintiff sues. (D.I. 23 at 2)

Plaintiff cites defendants' acquisition of Superior Essex and the creation of a Delaware holding company to establish personal jurisdiction. (D.I. 17 at 14) Plaintiff alleges that, at the time of the acquisition, Superior Essex "was marketing and selling, within Delaware and throughout the United States, products that infringe Belden's patents." (*Id.* at 16) Defendants respond that the acquisition of Superior Essex has "nothing to do with patent infringement" and is completely unrelated to this suit. (D.I. 23 at 11)

Finally, plaintiff points to defendants' website,[8] claiming that Delaware cable suppliers can become a "supply partner of LS Cable Ltd." by registering on an online

---

[8]The court acknowledges the heightened personal jurisdiction standard with respect to internet contacts. *See Kloth v. S. Christian Univ.*, 494 F. Supp. 2d 273, 279 (D. Del. 2007). The Third Circuit summarized this heightened standard by explaining that "the mere operation of a commercially interactive website should not subject the operator to jurisdiction anywhere in the world." *Toys "R" Us*, 318 F.3d at 454. Instead, "there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts." *Id.* Therefore, the court recognizes that, absent additional evidence of "specific targetting," the mere existence of defendants' website as asserted by plaintiff is insufficient to establish personal jurisdiction based on this heightened internet standard.

13

form available on defendants' website.  (D.I. 17 at 4; D.I. 18, ex. F)  Plaintiff further

alleges that Delaware distributors, by becoming a supply partner with defendants, "are

able to order LS Cable [Ltd.] products, distribute them to their customers in Delaware,

and obtain payment in Delaware from LS Cable Ltd."  (D.I. 17 at 4; D.I. 18, ex. F)

However, defendants argue that the registration form referenced by plaintiff (D.I. 18, ex.

F) is "for companies to supply their products to Defendants, not for Delaware residents

or distributors to order LS Cable [Ltd.] products."  (D.I. 23 at 10)  Additionally,

defendants contend, "[t]he public cannot purchase any LS Cable [Ltd.] products from

the website."  (*Id.*)

　　　Although defendants contest plaintiff's factual allegations, the standard of review

on a motion to dismiss for lack of personal jurisdiction requires the court to "construe

disputed facts in favor of the plaintiff."  *Toys "R" Us*, 318 F.3d at 457.  Plaintiff has

alleged sufficient facts and supported these allegations with competent evidence in the

form of a signed declaration containing exhibits.  (D.I. 18)  Plaintiff's exhibits include

internet pages and press releases from the defendants' own website and are not the

type of "internet research" that has been referred to as a "compilation of hearsay" in the

case[9] cited by defendants.  (D.I. 23 at 3)

　　　Plaintiff "presents factual allegations that suggest 'with reasonable particularity'

the **possible** existence of the requisite 'contacts between [the parties] and the forum

state.' "  *Toys "R" Us*, 318 F.3d at 456 (emphasis added) (citation omitted).  Plaintiff

---

[9]The court, in *In re Ameriserve Food Distribution Inc.*, 267 B.R. 668, 672 (D. Del. 2001), found that an expert witness's report, containing internet research and summaries of other individuals' conversations, "appear[ed] as a compilation of hearsay."

14

identifies defendants' business relationships with specific entities and alleges contacts with Delaware through these relationships. If explored, defendants' relationship with these entities **might** produce the required "something more" to establish personal jurisdiction. *See id.* Through exploring these relationships, plaintiff **could** unearth transactions, sales, or other contacts by defendants with Delaware. Furthermore, it is clear that "personal jurisdiction may be asserted on the basis of a 'single act' related to Delaware if the resulting claim has its basis in the asserted transaction." *Jeffreys v. Exten*, 784 F. Supp. 146, 151 (D. Del. 1992).

Allowing limited jurisdictional discovery based upon plaintiff's specific allegations and competent evidence is not authorizing a "fishing expedition based [only] upon . . . bare allegations." *See Accenture Global Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 663 (D. Del. 2008). Therefore, the court will allow limited jurisdictional discovery.

### C. Improper Venue

Plaintiff claims venue is proper under 28 U.S.C. §§ 1391(b), (d), and 1400(b). Because LS Cable Ltd. is a foreign corporation and because LS Cable America, Inc. is a domestic corporation, different sections of the venue statute apply to each corporation.

Subsection 1400(b), which governs patent disputes, provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). The definition of the term

"resides" in the patent venue statute is identical to the definition of "resides" in
subsection 1391(c), which provides that a defendant that is a corporation is deemed to
"reside" in a judicial district if it is subject to personal jurisdiction in that district. *See
Vikoma Int'l, Ltd. v. Oil Stop, Inc.*, No. 92-573, 1993 WL 14647, at *4 (D. Del. Jan. 14,
1993) (citing *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1580
(Fed. Cir. 1990)). Therefore, whether venue in Delaware is proper for LS Cable
America, Inc. depends upon whether the corporation is subject to personal jurisdiction
here. In light of this court's decision to allow jurisdictional discovery on the issue of
personal jurisdiction, the court at this time must deny without prejudice defendants'
motion to dismiss for improper venue with regard to LS Cable America, Inc.

However, the analysis changes for LS Cable Ltd. which, unlike LS Cable
America, Inc., is a foreign corporation. The Supreme Court has held that 28 U.S.C. §
1391(d), the general alien venue statute, supersedes the patent venue statute and
governs any suit against an alien. *See Brunette Mach. Works Ltd. v. Kockum Indus.,
Inc.*, 406 U.S. 706, 714 (1972). Section 1391(d) provides only that "[a]n alien[10] may be
sued in any district." 28 U.S.C. § 1391(d).

Plaintiff argues that venue is proper for LS Cable Ltd. because, as a Korean
corporation with its principal place of business in Korea, it may be sued in any district.
(D.I. 17 at 22) Defendants argue that venue is improper here for LS Cable Ltd. and cite
*Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd.*, 64 F. Supp. 2d 448,
454 (E.D. Pa. 1999), for the proposition that venue is improper when a court lacks

---

[10]Section 1391(d) applies to alien corporations. *See In re Auto. Refinishing Paint
Antitrust Litig.*, 358 F.3d 288, 296 n.10 (3d Cir. 2004).

16

personal jurisdiction over a foreign defendant.  (D.I. 23 at 18)  The issue, therefore, becomes whether a finding of personal jurisdiction over a foreign defendant is a preliminary requirement to § 1391(d)'s provision that an alien may be sued in any judicial district.  Although the Third Circuit has not addressed this precise issue, other federal courts have resolved the question as did the *Molnlycke* court, requiring a preliminary finding of personal jurisdiction.  *See, e.g.*, *In re Vitamins Antitrust Litig.*, 94 F. Supp. 2d 26, 30 (D.D.C. 2000); *Mizrahi v. Great-West Life Assurance Co.*, No. 99-819, 1999 WL 398714, at \*2 (E.D. Pa. June 17, 1999); *Simplex-Turmar, Inc. v. Roland Marine, Inc.*, No. 96-CV-0723E(M), 1997 WL 736541, at \*1 n.3 (W.D.N.Y. Nov. 14, 1997); *Mylan Labs., Inc. v. Akzo, N.V.*, No. 89-1671, 1990 WL 58466, at \*7 n.20 (D.D.C. Mar. 27, 1990); *Weinstein v. Norman M. Morris Corp.*, 432 F. Supp. 337, 339 (E.D. Mich. 1977).

In addition to these district court decisions, the Supreme Court has offered guidance that is applicable to this issue.  Discussing venue, the Court, in *Brunette Machine Works*, found that "suits against aliens were left unrestricted, and could be tried in any district, **subject only to the requirements of service of process**." *Brunette Mach. Works*, 406 U.S. at 708 (emphasis added).  As this court has before stated, service of process and personal jurisdiction are interrelated.  *See Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 516 F. Supp. 2d 324, 336 (D. Del. 2007).  In addition to these cases, it would seem unreasonable to conclude that a foreign corporation could be sued in any judicial district even if that corporation were not subject to personal jurisdiction anywhere in the United States.

17

Therefore, the court finds that venue hinges on the resolution of the personal

jurisdiction question. In light of the court's determination to allow jurisdictional

discovery, the court likewise will deny without prejudice defendants' motion to dismiss

for improper venue with respect to LS Cable Ltd.

### D. Insufficient Service of Process

"It is elementary that one is not bound by a judgment in personam resulting from

litigation . . . to which he has not been made a party by service of process." *Zenith*

*Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969). The Third Circuit

has stated that "the failure of the plaintiff to obtain valid process from the court to

provide it with personal jurisdiction over the defendant in a civil case is fatal to the

plaintiff's case." *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 569 (3d Cir. 1996).

Rule 4 allows service of process on a corporation in a judicial district of the

United States (1) pursuant to state law with respect to service for actions in courts of

general jurisdiction in the same state where the district court is located or where service

is made, (2) by delivering the summons and complaint "to an officer, a managing or

general agent, or to any other agent authorized by appointment or by law to receive

service of process," or (3) pursuant to internationally agreed means of service such as

those authorized by the Hague Convention. Fed. R. Civ. P. 4(e)(1), (h)(1)(A), (h)(1)(B),

and (f)(1).

Under Rules 4(h)(1)(A) and (e)(1), a domestic or foreign corporation must be

served by following the state law where the district court is located or where service is

made. Because this action was commenced in Delaware and because service was

18

made in New Jersey, the laws of both Delaware and New Jersey respecting service must be examined.  Delaware law mandates that service of process on a foreign corporation may be effected by delivery to "an officer, a managing or general agent or to any other agent authorized by law to receive service of process."  Del. Super. Ct. R. Civ. P. 4(f)(1)(III).  Similarly, New Jersey law requires that a corporation be served with process by delivery on "any officer, director, trustee or managing or general agent, [on] any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof."  N.J. Ct. R. 4:4-4(a)(6).  In short, both states' laws require service on a corporation's authorized agent.

Plaintiff alleges that its service of process on Jong Won Kim on December 8, 2008, at LS Cable America's principal place of business at Englewood Cliffs, New Jersey, was effective service of process on LS Cable Ltd.  (D.I. 17 at 6-7)  Plaintiff relies on information on file with the New Jersey Department of Treasury to substantiate its position that Kim was LS Cable Ltd.'s registered agent and that the Englewood Cliffs, New Jersey location was LS Cable Ltd.'s registered office.  (D.I. 18, ex. N)  Defendants contend that Kim was not LS Cable Ltd.'s registered agent.

On April 22, 2005, LS Cable Ltd. (old) registered its liaison office at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey with the Department of Treasury, State of New Jersey, appointing Kim as its agent.  (D.I. 13 at ¶ 2; D.I. 23 at 19)  On July 1, 2008, LS Cable Ltd. (old) changed its name and address to LS Corp., a holding company incorporated in the Republic of Korea with its principal place of business in Korea.  (D.I.

19

23 at 19; D.I. 13 at ¶ 2; D.I. 14 at ¶ 2) On July, 2, 2008, LS Corp. "established and registered" a new subsidiary, LS Cable Ltd. (new), with its principal place of business in Korea. (D.I. 23 at 19; D.I. 13 at ¶ 2; D.I. 14 at ¶ 2) Therefore, LS Cable Ltd. (old) and LS Cable Ltd. (new) are not the same companies. Defendants state that they have not filed any document to record the corporate change nor has LS Cable Ltd. (new) filed an application to appoint an agent for the new company. (D.I. 23 at 19) For this reason, according to defendants, the New Jersey state records do not reflect the changes of the company structure. (*Id.*) Based on defendants' statements, the New Jersey state records on which plaintiff relied for sufficiency of service of process represented that Kim was the registered agent for LS Cable Ltd. (old) and **not** for LS Cable Ltd. (new).

Both Delaware and New Jersey law require service on a company's registered agent. No registered agent for LS Cable Ltd. (new) has been named. Technically, no service was effected on LS Cable Ltd. when Kim received the summons and complaint. Although service on Kim likely led to LS Cable Ltd.'s knowledge of the suit, notice of a claim generally is not sufficient to establish personal jurisdiction. *Ayres*, 99 F.3d at 569.

Consistent with the court's finding that LS Cable Ltd. (new) is a separate and distinct corporate entity, service of process on the registered agent of LS Cable Ltd. (old) is insufficient.[11]  Nevertheless, because LS Cable Ltd. (new) has failed to register

---

[11]The instant circumstances are distinguishable from those described in *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 267-68 (3d Cir. 2008), where the Third Circuit found service at an old address proper, in light of defendant's failure to register a change of address. Here, service was made on the wrong defendant, not a wrong address.

Case 2:10-cv-05476-ES-CLW   Document 27   Filed 06/17/09   Page 22 of 22 PageID: 357

an agent, contrary to both Delaware and New Jersey law,[12] the court will give plaintiff an

extension of time under Rule 4(m) to address this question, either with the appropriate

State authorities and/or with counsel for LS Cable Ltd. (new).

## V. CONCLUSION

For the aforementioned reasons, the court denies defendants' motion to dismiss

without prejudice.  Plaintiff may pursue jurisdictional discovery for the next ninety (90)

days.  An appropriate order shall issue.

---

[12]As discussed above, plaintiff alleges that LS Cable Ltd. (new) transacts
business in and has contacts with Delaware.  Delaware law provides that:

> No foreign corporation shall do any business in this State, through or by
> branch offices, agents or representatives located in this State, until it shall
> have . . . filed in the office of the Secretary of State . . . [a] statement . . .
> setting forth . . . the name and address of its registered agent in this State,
> which agent shall be either an individual resident in this State when
> appointed or another corporation authorized to transact business in this
> State.

8 Del. C. § 371(b)(2).

Plaintiff also alleges that LS Cable Ltd. (new) has an office in New Jersey and
conducts importation and warehousing efforts in New Jersey.  (D.I. 17 at 14)  New
Jersey law provides that "every foreign corporation authorized to transact business in
this State shall continuously maintain a registered office in this State, and a registered
agent having a business office identical with such registered office."  N.J. Stat. Ann. §
14A:4-1(1).

21