IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BELDEN TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 08-823-SLR |
| | ) | |
| LS CORP., LS CABLE LTD., AND LS CABLE AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

---

John W. Shaw, Esquire, Karen E. Keller, Esquire, and Pilar G. Kraman, Esquire of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware.  Counsel for Plaintiff. Of Counsel:  Matthew B. Lowrie, Esquire, Marc N. Henschke, Esquire, and Michelle A. Flores, Esquire of Foley & Lardner LLP, Boston, Massachusetts.

Jeffrey L. Moyer, Esquire, Anne Shea Gaza, Esquire, and Lori A. Brewington, Esquire of Richards, Layton & Finger, P.A., Wilmington, DE.  Counsel for Defendants LS Cable Ltd. and LS Cable America, Inc.  Of Counsel:  Brian M. Poissant, Esquire, Yeah-Sil Moon, Esquire, and Jonathan A. Muenkel, Esquire of Jones Day, New York, New York.

---

**MEMORANDUM OPINION**

Dated: Sept. 30, 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On October 31, 2008, plaintiff Belden Technologies, Inc. ("Belden" or "plaintiff")

filed the present action against LS Corp., LS Cable Ltd. ("LS Korea"), LS Cable

America, Inc. ("LS America"), Superior Essex Inc. and Superior Essex Communications

LP for infringement of United States Patent Nos. 7,339,116 B2 ("the '116 patent");

7,135,641 B2 ("the '641 patent"); 6,596,944 B1 ("the '944 patent"); and 6,074,503 ("the

'503 patent") (collectively, the "patents-in-suit"). (D.I. 1)  Plaintiff amended its complaint

on December 5, 2008, alleging infringement of the same patents but dropping Superior

Essex Inc. and Superior Essex Communications LP from the suit.[1]  (D.I. 5)  LS Korea

and LS America (collectively, "defendants") filed a motion to dismiss to contest proper

personal jurisdiction and venue.  (D.I. 11)  Defendants asserted that:  (1) they are not

subject to personal jurisdiction in Delaware because they have insufficient contacts with

the State; and (2) venue is improper because defendants do not "reside" in Delaware.[2]

(D.I. 12)

On June 17, 2009, the court denied defendants' motion to dismiss without

---

[1] Belden brought a separate, but related, patent infringement action against Superior Essex Inc. and Superior Essex Communications LP on January 29, 2008. The case was recently tried before a jury in this court. *See Belden Tech., Inc. v. Superior Essex, Inc.*, Civ. No. 08-063-SLR (D. Del.).  In June of 2008, LS Korea acquired Superior Essex, Inc. as a subsidiary.  (D.I. 60 at 2)

[2] Defendants also asserted insufficient service of process for LS Korea but, because it had failed to register an agent contrary to Delaware and New Jersey law, the court granted plaintiff an extension of time under Rule 4(m) to properly serve LS Korea. (D.I. 27 at 20-21)
    Defendants state that LS Corp. has never been served.  (D.I. 82 at 3)  There has never been a formal motion to dismiss LS Corp. on this ground.

prejudice and allowed plaintiff time for jurisdictional discovery. (D.I. 27)[3] During this period, plaintiff served defendants with document requests, interrogatories, and requests for admission. (D.I. 50 at 4) Plaintiff also took Rule 30(b)(6) depositions of representatives from both LS Korea and LS America. (*Id.*) Following the conclusion of jurisdictional discovery, defendants renewed their motion to dismiss for lack of personal jurisdiction and improper venue on December 16, 2009. (D.I. 49) This motion is presently before the court.

After the conclusion of briefing on the renewed motion, and after the period for jurisdictional discovery had ended, defendants turned over three new documents regarding their product warranties. (D.I. 79 at 1) In its memorandum order dated July 14, 2010, the court granted plaintiff's subsequent motion for leave to file a surreply in order "to address how the warranties would support proper jurisdiction of defendants in Delaware." (D.I. 78 at 2) The court heard oral argument on August 4, 2010. (*Id.*) The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## II. BACKGROUND[4]

Belden is a Delaware corporation with its principal place of business in St. Louis, Missouri; it owns the '116, '641, '944, and '503 patents,[5] which relate to data and

---

[3] Available at *Belden Technologies, Inc. v. LS Corp.*, 626 F. Supp. 2d 448 (D. Del. 2009).

[4] For purposes of the renewed motion to dismiss, the facts as alleged in plaintiff's amended complaint (D.I. 5) are assumed to be true.

[5] The '116 patent, entitled "High Performance Data Cable," issued on March 4, 2008. (D.I. 5, ex. A) The '641 patent, entitled "Data Cable With Cross-Twist Cabled Core Profile," issued on November 14, 2006. (*Id.*, ex. B) The '944 patent, entitled

communications cables.  Belden seeks relief from LS Corp., LS America and LS Korea for alleged infringement of one or more of the patents-in-suit.

LS Korea is a Korean manufacturer of, inter alia, the category 6 communications cables accused of patent infringement in this action.  LS Korea makes certain direct sales to customers in the United States (Honeywell Security, Panduit Corp. and Wavenet Inc.), but not within the State of Delaware.  LS Korea has one independent sales representative (KC Systems) that has sold LS Korea's products only to customers outside of Delaware.  There is no indication that LS Korea engages in any marketing or advertising in the United States.  LS Korea has purchased raw materials from American companies, such as Du Pont in Delaware.

LS America is a New Jersey corporation with an office in Englewood Cliffs, New Jersey.  LS America purchases the majority of its products from LS Korea.  LS America imports cables directly from LS Korea's manufacturing facilities in South Korea and Vietnam, and takes title to the products at the time of their shipment.  LS America receives the products in ports in Los Angeles, California; Long Beach, California; Houston, Texas; New York, New York; Charlestown, South Carolina; Savannah, Georgia; and Seattle, Washington.  Products are stored in third-party warehouses at the following locations:  Brea, California; Irwindale, California; Jackson, New Jersey; Houston, Texas; Piedmont, South Carolina; Englewood, Colorado; and Savannah, Georgia.

LS America sells its cable products directly to customers or through non-

---

"Enhanced Data Cable With Cross-Twist Cabled Core Profile," issued on July 22, 2003. (*Id.*, ex. C)  The '503 patent, entitled "Making Enhanced Data Cable With Cross-Twist Cabled Core Profile," issued on June 13, 2000.  (*Id.*, ex. D).

exclusive, independent sales representatives to regional distributors.  There is no evidence that LS America has made any direct sales to Delaware citizens.  LS America's only east coast sales representative is Viking Electronics ("Viking"), a New Jersey corporation that owns and operates the Jackson, New Jersey warehouse where LS America stores product.

There are two agreements with Viking of record.  The "Sales Representative Agreement" (hereinafter, the "Viking sales agreement") designates Viking as "an authorized non-exclusive independent representative to solicit, promote and sell [LS America's] products as set forth in Schedule 1, Section A . . . to the customers set forth in Schedule 1, Section B . . . within the geographical area set forth in Schedule 1, Section C ("the Territory")."  (D.I. 61, ex. 27)  The customers are defined as "distributors and premises & LAN markets and applications" with certain exclusions unrelated to geographic area.  (*Id.* at Schedule 1, p. LSCA5877)  The "Territory" is defined as:

- •    New York – Long Island, 5 Boroughs,[6] Westchester County, Rockland County
- •    New Jersey
- •    Fairfield County Connecticut
- •    Eastern Pennsylvania
- •    Maryland
- •    Virginia
- •    North Carolina
- •    South Carolina
- •    Georgia
- •    Florida

(*Id.*)  As the foregoing indicates, Delaware is not within Viking's "authorized" Territory, nor is there any specific exclusion regarding sales to Delaware.  The Viking sales agreement also provides that LS America will pay Viking commission on orders "that

---

[6]"Manhattan, Brooklyn, Queens, Bronx, [and] Staten Island."

5

have been shipped, invoiced and for which payment has been received." (*Id.* at LSCA5873)  The agreement specifically contemplates LS America's right to solicit sales outside of the defined Territory, but does not similarly specify that Viking has such rights, stating only that LS America may elect to pay commissions on sales billed outside of the Territory (for sales made in the Territory). (*Id.* at LSCA5874)

LS America also entered into a "Stocking Warehouse Agreement" with Viking whereby Viking was designated as "the East Coast Stocking Warehouse for [LS America's] inventory/products." (*Id.*, ex. 30)  Under the "Order Terms" provision, that agreement states that "[n]o order shall be shipped without **credit** and **selling price** approval by [LS America.]" (*Id.*) (emphasis added)  LS America agreed to "provide trucking, UPS and Federal express accounts for order[s] more than $3500." (*Id.*)

Four invoices of record account for sales of the accused category 6 data cables to Delaware customers.  Each invoice contains a "LS Cable America, Inc." header and New Jersey address.  A first invoice (dated May 4, 2006) reflects a "bill to" addressee of Archtech Electronics Corporation in Dayton, New Jersey and a "ship to" addressee of D&M Electronics in Wilmington, Delaware.  (D.I. 61, ex. 37)  A second invoice reflecting the same purchaser and "ship to" address is dated May 10, 2006. (*Id.*, ex. 38)  A third invoice (dated August 11, 2006) reflects a "bill to" addressee of Lynx Communications in Jackson, New Jersey and "ship to" addressee of a residential home office in Dagsboro, Delaware.  (*Id.*, ex. 36)  The fourth invoice (dated December 1, 2008) provides a "bill to" addressee of Graybar in Saint Louis, Missouri and a "ship to" addressee of Advanced Networking in Wilmington, Delaware.  (*Id.*, ex. 39)  This 2008

invoice is the only category 6 cable invoice made to a customer outside of Viking's specified sales territory and shipped to a Delaware end-user.  The total sales volume of these four transactions was $1,760.

Plaintiff alleges that, when LS America sells data cables to United States customers, a warranty is provided by LS Korea.  (D.I. 60 at 15)  In support, plaintiff relies on two warranties produced by defendants, entitled "Basic Product Warranty for Copper Data Cable" and "Extended Product Warranty for Copper Data Cable" and dated November 1, 2007 and June 1, 2008, respectively.  (D.I. 72, ex. 1 & 2)  Each is an unexecuted letter warranty addressed generally "[t]o whom it may concern," with no mention of a specific company.  Both documents contain a "LS Cable America, Inc." header with New Jersey address.[7]  (Id.)  The body of the letters state in relevant part:

> LS Cable Ltd. certifies that the products shall be free from defects in design, material and workmanship and conform to the technical specifications against the executed order for the guarantee period of [12 months/25 years] after delivery to the customer.
> * * *
> If the product is determined to be defective, through no fault of the customer, LS Cable Ltd. shall replace the defective products at its own cost during the warranty period of 12 months from delivery to the customer.  LS Cable Ltd. shall replace any defective products within 8 weeks from the date of the confirmation of the cause of the defect.

(Id.)  In each case there is a blank signature line above the caption "LS Cable Ltd. Quality Assurance Team."  (Id.)

Plaintiff has provided an email correspondence between a salesman at DCO Distribution, Inc., another of LS America's distributors, and a Viking employee requesting a 25 year warranty from LS Korea for a potential customer.  A reply is given

---

[7]A footnote to the one-page letter states that LS America is a "LS Company, 100% invested and owned by LS Cable Ltd. in Korea[.]"

that Viking "ha[s] the same type of warranty;" cc'd on the email were employees of LS America and "LS Cable," according to their email addresses.  LS America responded and attached a "LS Cable America Extended Warranty" document.  (D.I. 72, ex. 3)  Although defendants concede that warranties did follow LS cable products into Delaware (D.I. 82 at 22), it is unclear whether the warranties originate with LS Korea, or are drafted by LS America on LS Korea's behalf.

In sum, neither LS America nor LS Korea has any physical presence in Delaware.  Defendants, in their declarations, have maintained that they never had any offices, employees, agents or bank accounts in Delaware.  (D.I. 50 at 4-5)  Nor is there any evidence that defendants ever maintained any inventory, owned any property, executed any contract, performed any service or litigated any legal action in Delaware.  (*Id.*)  Plaintiff does not dispute these facts.  Plaintiff nonetheless asserts that the court has jurisdiction over defendants based on:  (1) defendants' overall business plan to market and sell their products throughout the entire United States; (2) four instances of defendants' cable products penetrating the Delaware market; (3) warranties that defendants allegedly offered to all end-users, including the four located in Delaware; and (4) LS Korea's purchases of raw materials from companies located in Delaware.  (D.I. 60)

## III. STANDARDS

To establish personal jurisdiction, a plaintiff must show, by a preponderance of the evidence, that (a) "there is a statutory basis for jurisdiction under the forum state's long arm statute" and (b) "the exercise of jurisdiction comports with the defendant's right to due process."  *Boston Scientific Corp. v. Wall Cardiovascular Tech.*, 647 F. Supp. 2d

358, 364 (D. Del. 2009) (citations omitted).  Pursuant to the relevant portions of

Delaware's long-arm statute, 10 Del. C. § 3104 (c)(1) - (4), a court may exercise

personal jurisdiction over a defendant when the defendant or its agent:

> (1)  Transacts any business or performs any character of work or
>       service **in** the State;
> (2)  Contracts to supply services or things **in** this State;
> (3)  Causes tortious injury in the State by an act or omission **in**
>       this State;
> (4)  Causes tortious injury in the State or outside the State by an
>       act or omission outside the State **if** the person regularly
>       does or solicits business [**in** the State], engages in any
>       other persistent course of conduct **in** the State or derives
>       substantial revenue from services, or things used or consumed
>       **in** the State. . . .

10 Del. C. § 3104(c)(1) - (4) (emphasis added).  With the exception of (c)(4), the long-

arm statute requires a showing of specific jurisdiction.  *See Shoemaker v. McConnell*,

556 F. Supp. 2d 351, 354,55 (D. Del. 2008).  Subsection (c)(4), on the other hand,

requires a showing of general jurisdiction, that is, a showing that defendant or its agent,

through more than minimum contacts, is "generally present" in the forum state. *See G*

*& G LLC v. White*, 535 F. Supp. 2d 452, 461 (D. Del. 2008).

If defendant is found to be within the reach of the long arm statute, the court then

must analyze whether the exercise of personal jurisdiction comports with due process.

*Shoemaker v. McConnell*, 556 F. Supp. 2d 351, 354 (D. Del. 2008).  The exercise of

personal jurisdiction comports with due process where "the defendant's conduct is such

that it should 'reasonably anticipate being haled into court there.'"  *L'Athene, Inc. v.*

*EarthSpring LLC*, 570 F. Supp. 2d 588, 591 (D. Del. 2008) (quoting *World-Wide*

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Personal jurisdiction may be

9

either specific or general. For the court to exercise specific personal jurisdiction consistent with due process, plaintiff's cause of action must have arisen from the defendant's activities in the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Woodson,* 444 U.S. at 297. For the court to exercise general personal jurisdiction consistent with due process, plaintiff's cause of action can be unrelated to the defendant's activities in the forum state so long as the defendant has "continuous and systematic contacts with the forum state." *Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F.Supp. 1458, 1470 (D. Del. 1991).

## IV. DISCUSSION

### A. Personal Jurisdiction

#### 1. Stream of commerce and dual jurisdiction

The first issue before the court on defendants' motion is whether personal jurisdiction exists over LS America and/or LS Korea under Delaware's concept of "dual jurisdiction." The dual jurisdiction concept arises from at least partial satisfaction of subsections (1) and (4) of the Delaware long-arm statute. *See Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 371 (D. Del. 2008). The approach was adopted by Delaware courts as a mechanism by which to apply the long-arm statute to "stream of commerce" situations, or situations where a non-resident places its product in the market place and may, under certain circumstances, be found to have sufficient contacts with Delaware (or with any state in the stream of commerce.) *See id.* at 371.[8] Dual jurisdiction may be established "when a manufacturer has sufficient

---

[8]As explained by Judge Stark of this court,

Delaware state courts have [ ] held that a stream of commerce theory of

10

general contacts with Delaware and **the plaintiffs' claims arise out of those**

**contacts**, jurisdiction is appropriate under § 3104 (c)(1) and (c)(4) [of the Delaware

long arm statute]." *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1158 (Del. Super. 1997)

(citing *LaNouva D & B, S.p.a. v. Bowe Co.*, 513 A.2d 764, 768 n.3 (Del. Super. 1986)),

*aff'd*, 707 A.2d 765 (Del. 1998) (emphasis added).  More specifically,

> the enumerated activities in [subsection (4)] should be analyzed to determine
> whether there is an intent or purpose on the part of the [non-resident] to serve
> the Delaware market with its product.  Likewise, when analyzing [subsection] (1)
> it is not important that the [non-resident] itself act in Delaware.  Instead, if the
> intent or purpose on behalf of the [non-resident] to serve the Delaware market
> **results in the introduction of the product to this State and plaintiff's cause
> of action arises from injuries caused by that product**, this section is satisfied.

*Boone*, 724 A.2d at 1158 (emphasis added).  Thus, the dual jurisdiction analysis

requires a showing of both:  (1) an intent to serve the Delaware market; and (2) that this

intent results in the introduction of the product into the market and that plaintiff's cause

of action arises from injuries caused by that product.  *See Power Integrations*, 547 F.

Supp. 2d at 372.  A court "must take great care" not to overemphasize either prong in a

dual jurisdiction analysis.  *Id.* (citing *Boone*, 724 A.2d at 1158).

### 2. Delaware long-arm statute

---

> jurisdiction may satisfy Delaware's long-arm statute.  However, the stream
> of commerce theory does not fit comfortably within any particular provision
> of Delaware's statute.  This is because stream of commerce is a theory of
> specific jurisdiction.  But it does not fit within subsection (c)(1) – the only
> potentially applicable specific jurisdiction provision – because (c)(1)
> "requires that some act on the part of the defendant . . . have occurred in
> Delaware," yet stream of commerce jurisdiction does not.  Neither,
> however, does the stream of commerce theory fit within subsection (c)(4),
> since (c)(4) provides general – and not specific – jurisdiction.

*Power Integrations*, 547 F. Supp. 2d at 371 (internal citations omitted).

11

### a. LS America

Plaintiff asserts that LS America's failure to "carve out" Delaware in the Viking sales contract, and the warranties provided to Delaware customers, evidence LS America's intent to serve the Delaware market. "Under *Boone*, the touchstone of dual jurisdiction analysis is intent and purpose to serve the Delaware market." *Power Integrations,* 547 F. Supp. 2d at 372 (citing *Boone,* 724 A.2d at 1158). "[A] non-resident firm's intent to serve the United States market is sufficient to establish an intent to serve the Delaware market, unless there is evidence that the firm intended to exclude from its marketing and distribution efforts some portion of the country that includes Delaware." *Id.* at 373 (collecting authority). Here, LS America assigned east coast sales rights to Viking; Delaware was not specifically included, yet Viking made at least four sales to Delaware customers. There is no indication that LS Korea or LS America thereafter directed Viking to cease sales to Delaware customers, or to direct distributors such as Graybar to do the same. Delaware was not specifically excluded from Viking's sales "Territory." That LS America did not specifically target Delaware is of no moment under these circumstances. Under *Boone*, LS America, through its distribution agreement with Viking, "has engaged in the additional conduct necessary under the stream of commerce theory so as to establish minimum contacts with Delaware." *Boone,* 724 A.2d at 1161. The court, therefore, finds that jurisdiction over LS America is appropriate under §§ 3104 (c)(1) and (c)(4).[9]

---

[9]As the parties agree that four sales were made to Delaware citizens, the court considers the first portion of the second prong, or whether LS America's intent resulted in the introduction of the accused category 6 cable products in the Delaware market, as having been satisfied.

Additionally, plaintiff's cause of action – patent infringement – arises from injuries

### b. LS Korea

Even assuming that LS Korea had the requisite "intent to serve" the Delaware

market,[10] plaintiff must still demonstrate that this intent resulted in the introduction of

category 6 cable into the Delaware market **by LS Korea**.  There is no evidence of

record that LS Korea sent any cable to Delaware.  LS America takes title to the cable in

South Korea or Vietnam, prior to importation.  Plaintiff's theory must fail in this regard.

### 3. Due process – LS America

In *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*,

480 U.S. 102 (1987), Justice O'Connor proposed a test for determining when "minimum

contacts" are present in a stream of commerce case.  *See Boone v. Oy Partek Ab*, 724

A.2d 1150, 1159, n.4 (Del. Super. Sept. 4, 1997) (noting that Justice O'Connor's

analysis has been adopted in Delaware) (citation omitted).  That is, "minimum contacts"

requires:  (1) placement of the product into the stream of commerce; plus (2) "an act of

the [non-resident] defendant purposefully directed toward the forum State."  *Asahi*, 480

U.S. at 112.

The threshold inquiry presented by the parties is whether the tests for dual

_____

caused by defendants' category 6 cable.  *See Power Integrations*, 547 F. Supp. 2d at
373; *see also Forest Labs. Inc. v. Cobalt Labs. Inc.*, Civ. No. 08-21, 2009 WL 605745,
*10 (D. Del. Mar. 9, 2009) (dual jurisdiction applies to patent infringement actions).

[10]Plaintiff argues that the following facts evidence LS Korea's intent to serve the
Delaware market:  (1) LS Korea formed LS America to serve the United States market;
(2) LS Korea recently acquired Superior Essex, Inc., an American cable manufacturer,
as its wholly-owned subsidiary; and (3) LS Korea designed its cables for the United
States market.  (D.I. 60 at 25-29)  "[E]vidence that [defendants] designed the [accused
product] for the U.S. market is evidence that [they] designed the product for the
Delaware market[.]"  *See Power Integrations, Inc. v. BCD Semiconductor Corp.*, Civ.
No. 07-633, 2008 WL 3850871, *2 (D. Del. Aug. 12, 2008).

jurisdiction and due process compliance are equivalent. The court concludes that both analyses look to the non-resident defendant's "intent or purpose" to serve the Delaware market. *See Power Integrations*, 547 F. Supp. 2d at 375. Nevertheless, the court declines to forego a due process analysis on the basis of its finding under the Delaware long-arm statute.

There is no doubt in this case that LS America placed the accused category 6 cables into the stream of commerce; it is the second prong of Justice O'Connor's test at issue in this case, i.e., whether LS America completed an act "purposefully directed toward the forum State." As described by Justice O'Connor,

> [t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi*, 480 U.S. at 112. In sum, that LS America placed product in the general United States market may suffice to demonstrate an "intent to serve" Delaware under Delaware's dual jurisdiction theory, but placing the accused category 6 cables into the United States market does not also constitute the "additional conduct" required to pass muster under due process.

Defendants argue that LS Korea manufactured category 6 cables with

specifications meeting national (TIA/EIA[11]) standards;[12] LS America has not designed any products. (D.I. 60 at 26) There is no indication that LS America advertises in Delaware. LS America has no office, agents, employees or property in Delaware. The Viking sales agreement is worded such that only the listed territories are contemplated as being part of the contract. There is no catch-all language, such as "the eastern coast" or "eastern region." Notably, the territories specified are very particular, for example, "Fairfield County" in Connecticut and the "5 Buroughs" of New York City. This specificity buttresses the implication that, although not expressly excluded, LS America did not contemplate sales in Delaware. (D.I. 61, ex. 27) Put another way, although Viking made four sales to Delaware residents, it is not clear from the sales agreement that Viking affirmatively "agreed to serve as the sales agent in the forum State" as contemplated by Justice O'Connor.[13] *Asahi*, 480 U.S. at 112.

LS America did provide warranties on the Delaware sales and, therefore, did make certain direct contact with this forum. As indicated previously, although the

---

[11]The Telecommunications Industry Association/Electronic Industries Alliance is a United States-based standards setting organization for telecommunications cabling.

[12]"[E]vidence that [defendants] designed the [accused product] for the U.S. market is evidence that [they] designed the product for the Delaware market[.]" *See Power Integrations, Inc. v. BCD Semiconductor Corp.*, Civ. No. 07-633, 2008 WL 3850871, *2 (D. Del. Aug. 12, 2008).

[13]Plaintiff avers that it would have to issue 100 subpoenas to all of LS America's third party distributors to accurately determine whether any other product was shipped by distributors to Delaware. (D.I. 82 at 32) Plaintiff does not argue that another distributor (besides Viking) services the northeastern corridor. Plaintiff was afforded jurisdictional discovery to determine whether LS America targets Delaware and, through discovery posed to LS America, should have been able to determine whether LS America knowingly approved sales to Delaware. Plaintiff has no concrete evidence in this regard.

documents of record are unsigned, there appears to be no dispute that the warranties of record are legitimate and were issued to Delaware customers.[14] The letters containing the manufacturer warranties (by LS Korea) contain a LS America header and its New Jersey address. Even assuming that copies of these documents were executed and "purposefully directed" to all four Delaware customers, there is nothing "regular" about LS America's four contacts with the forum State. *Id.*

Ultimately, it is plaintiffs' burden to demonstrate, by a preponderance of the evidence, that jurisdiction over LS America comports with the due process clause, i.e., that LS America had an intent or purpose to serve the Delaware market. The facts at bar are at best evenly weighed; the court concludes that plaintiffs have not met their burden of persuasion. Based on the foregoing, the court declines to exercise jurisdiction over LS America.

### B. General Jurisdiction – LS Korea

Plaintiff also argues that jurisdiction over LS Korea is appropriate under a general jurisdiction approach. *See* 10 Del. C. § 3104(c)(4) (general jurisdiction is proper if LS Korea "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in this State."). First and foremost, plaintiff points to LS Korea's warranties that followed the sales of product into Delaware. Plaintiff primarily relies on the Delaware Supreme Court's decision in *LaNouva D&B S.p.A. v. Bowe Co.*, 513 A.2d 764 (Del. 1986), in this regard. In *LaNuova*, the Court affirmed the exercise of

---

[14]The dates of the letters of record (November 1, 2007 and June 1, 2008) do not specifically correlate to the Delaware sale dates (2006 and December, 2008).

16

jurisdiction over an Italian manufacturer who had, through its New Jersey distributor, provided warranties on its roofing products which had been previously signed in blank by the President of *LaNuova*. *Id.* at 767.  LaNuova secured its warranty program with liability insurance.  One such warranty followed a sale of roofing material that, after passing through another distributor and a general contractor, was ultimately installed in Delaware and was alleged to be the cause of a subsequent fire on the premises.  *Id.* The Court held that LaNuova's warranty program created a jurisdictional presence pursuant to § 3104(c)(4) and that the imposition of in personam jurisdiction did not violate the due process clause of the Fourteenth Amendment.  Importantly, the Court stated that "consumer-based claims, such as that involved here, in which [the New Jersey distributor] seeks to require LaNuova to respond to product claims[,] must necessarily find their jurisdictional basis in LaNuova's conduct vis-a-vis the ultimate consumer." *Id.* at 769.  LaNuova had intentionally set out to create a consumer connection through its warranties and, therefore, it could reasonably anticipate being haled into court in Delaware. *Id.* at 770.  Furthermore, LaNuova's "role as [the] warranting manufacturer is clearly enhanced by the presence of product liability insurance which LaNuova expressly incorporated in the warranty document." *Id.*

The court finds the action at bar distinguishable from *LaNuova*.  The action at bar is not for a consumer-based (product liability) claim.  This action does not stem from (or relate to) LS Korea's warranties on category 6 cable.  Therefore, the warranties do not create an expectation that LS Korea will be haled into court in Delaware to defend a patent infringement action against a competitor.

17

Moreover, while LS Korea enjoys some measure of consumer goodwill based on its warranties, there is no indication that LS Korea was aware that LS America provided its warranties to Delaware consumers.  The warranties do not appear to be insured. *Compare LaNuova*, 513 A.2d at 770 ("The **quality** and **nature** of [LaNuova's] warranty program provides the constitutionally required level of minimum contacts.") (emphasis added).  Four warranties on products valued at less than $2000 sold over the course of three years to Delaware residents under these circumstances do not rise to the level of "regular[ ] business" or a "persistent course of conduct" in the State sufficient to justify an exercise of general jurisdiction over LS Korea.[15]  10 Del. C. § 3104(c)(4).

## C. Venue

Defendants argue in the alternative that plaintiff's first amended complaint should be dismissed under Rule 12(b)(3) for improper venue.  The purpose of venue, in most instances, "is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994).

For the purposes of venue, a defendant "that is a corporation . . . reside[s] in any judicial district in which it is subject to personal jurisdiction at the time the action is

---

[15]The court notes and dismisses plaintiff's argument that LS Korea's relationships with United States raw materials suppliers (such as E.I. duPont de Nemours & Company in Delaware) bolsters its general jurisdiction theory.  "[M]ere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a non-resident corporation in a cause of action not related to those purchase transactions." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984).  Plaintiff's patent infringement action is not related to LS Korea's purchase of raw materials.  That LS Korea may have used these materials in its construction of cable jackets on its allegedly infringing category 6 cables is, therefore, of no moment.

commenced." 28 U.S.C. § 1391(c). The court has found that plaintiff has not met its burden to demonstrate that the court has personal jurisdiction over defendants at bar.

Title 28 of the United States Code § 1400(b) provides that a "civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement **and** has a regular and established place of business." *Id.* (emphasis added) There is no dispute that LS America and LS Korea have no established place of business in Delaware. In its opposition papers, plaintiff asserts only that venue is proper because Superior Essex, LS Korea's newly-purchased subsidiary, is already before this court in other litigation. (D.I. 60 at 38-39)

Plaintiff has not proposed transfer to another district as an alternative to dismissal. "A court may sua sponte cure jurisdictional and venue defects by transferring a suit under the federal transfer statutes, 28 U.S.C. §§ 1406(a) and 1631, when it is in the interests of justice." *See Forest Labs.*, 2009 WL 605745 at *12, n.9 (citing *Trujillo v. Williams*, 465 F.3d 1210, 1222 (10th Cir. 2006) and *Island Insteel Sys., Inc. v. Waters,* 296 F.3d 200, 218 n. 9 (3d Cir. 2002)). Upon consideration of these interests,[16] the court finds that the case at bar should be transferred to the United

---

[16]Although emphasizing that "there is no definitive formula or list of factors to consider," the Third Circuit has identified potential factors it characterized as either private or public interests to be considered on a motion to transfer, including: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

States District Court for the District of New Jersey.

Plaintiff is a Delaware corporation, but principally operates in Missouri and, therefore, litigation in either Delaware or New Jersey will occur outside of its home turf. There is no bona fide relationship between Delaware and defendants at bar.  By contrast, LS America is a New Jersey corporation with its headquarters in New Jersey. The only sales of accused infringing category 6 cable occurred through Viking, a New Jersey distributor, which operates a warehouse in Jackson, New Jersey where it stores LS America's products.  There is no question that there exists personal jurisdiction over LS America in New Jersey.  New Jersey has an interest in overseeing litigation concerning one of its citizens who imports purportedly infringing product into its territory; Delaware has no competing interest in this case.

Plaintiff asserts, and defendants do not specifically refute, that LS Korea sells data cables directly to several United States customers outside of Delaware, such as Honeywell Security, Panduit Corporation, and Wavenet, Inc.  (D.I. 60 at 9-10)  Plaintiff does not argue that any of these companies reside in New Jersey or that any such sales occurred in New Jersey.  Under New Jersey law, however, jurisdiction over LS Korea would be conferred by service of LS America if LS America is deemed to be an "alter ego or agent" of LS Korea, after considering:  (1) whether LS America is doing business in the forum that would otherwise be performed by the parent; (2) whether there is common ownership between the companies; (3) financial dependency on LS Korea by LS America; and (4) whether LS Korea exerts control over LS America's marketing and operating policies and the like.  *See Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 513 (D.N.J. 2008) (citations omitted).  Plaintiff makes several of these

20

arguments in connection with the motion at bar, suggesting that jurisdiction may be appropriate over LS Korea in New Jersey.

Although plaintiff's forum choice is afforded deference in a transfer analysis, there appears no particular justification for plaintiff's selected forum in this case. At oral argument, counsel indicated that the District of Delaware is a good jurisdiction for both parties because it is "commercially savvy" and "handles a lot of patent cases." (D.I. 82 at 45) Further, counsel asserted that it is "just across the river from New Jersey" and litigation here is not especially burdensome in that regard. *Id.* However, absent personal jurisdiction over defendants, the court finds that the interests of justice are satisfied by the transfer of the instant case to New Jersey.

## V. CONCLUSION

For the aforementioned reasons, defendants' renewed motion to dismiss for lack of personal jurisdiction and, alternatively, for improper venue (D.I. 49) is granted, however, the court transfers the case at bar to the United States District Court for the District of New Jersey. An appropriate order shall issue.